UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| STAPLE COTTON COOPERATIVE ASSOC. and BELTWIDE COTTON COOPERATIVE, )<br>)<br>)<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>D.G. AND G., INC., et al., )<br>)<br>Defendants. ) | Case No. 1:06cv0046 TCM |

## MEMORANDUM AND ORDER

This action began with the filing by Staple Cotton Cooperative Association and Beltwide Cotton Cooperative ("Plaintiffs") of a fifteen-count complaint, including a count alleging a cause of action against defendant D. G. and G., Inc. ("DG&G") for tortious interference with contract (Count III) and a count alleging a cause of action against DG&G and defendant Gaylon Lawrence for civil conspiracy (Count XIV). DG&G has moved to dismiss Counts III and XIV for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6); Lawrence has separately moved to dismiss Count XIV on the same grounds. [Docs. 25, 27]

### Background

Assuming, as the Court must when considering a Rule 12(b)(6) motion, the facts alleged in the complaint to be true, the following allegations are relevant to the disposition of the pending motions.

Plaintiffs are not-for-profit cooperative agricultural marketing associations. (Compl. ¶¶ 1, 2, 48.) "Grower members of the associations transfer their cotton to [Plaintiffs], and [Plaintiffs] sell the cotton to third parties." (Id. ¶ 48.) The grower members named as defendants ("Defendant Producers") agreed to transfer all cotton produced on specified farm tracts to one of the two Plaintiffs in exchange for certain payments. (Id. ¶¶ 48-49.) This obligation gave rise under Mo.Rev.Stat. § 400.2-722 to Plaintiffs holding "an equitable, insurable and/or special interest" in the cotton. (Id. ¶ 51.) The underlying agreements also require that the cotton meet industry standards of merchantability. (Id. ¶ 50.)

At all times relevant, DG&G agreed to act as an agent for Defendant Producers and to gin their cotton. (Id.) Lawrence was the president of and had controlling interest in DG&G. (Id. ¶ 4.)

Plaintiffs allege that "DG&G, at the direction of or with the approval and/or under the control of . . . Lawrence, added excess water during the packing process to the cotton that was under contract between Plaintiffs and Defendant Producers." (Id. ¶ 53.) After this cotton was ginned, it was delivered to a cotton warehouse for storage. (Id.) Negotiable warehouse receipts were issued on delivery. (Id.) These receipts "would be used by Defendant Producers to obtain payment therefore, and . . . by Plaintiffs as security for loans, and to accomplish sales of the subject cotton." (Id.) Ownership of, and title to, the cotton was transferred to either Plaintiff; in turn, the appropriate Plaintiff paid the Defendant Producers. (Id. ¶ 54.)

After the Defendant Producers had been paid, Plaintiffs learned that the cotton they had bought did not meet industry standards of merchantability because of the excess water placed in the cotton bales by DG&G and Lawrence during the ginning process. (Id. ¶ 55.)

In Count III, Plaintiff allege that DG&G performed this act of adding excess water with the intention of, and without justification for, interfering with the contractual relationship between Plaintiffs and Defendant Producers, thereby causing damage to Plaintiffs. (Id. ¶¶ 69-71.) In Count XIV, Plaintiffs also allege that DG&G and Lawrence "conspired to artificially inflate the weight of cotton ginned by . . . DG&G by adding water thereto." (Id. ¶ 122.) Plaintiffs specifically allege that this artificial inflation was done by DG&G "at the direction of or with the approval of and/or in combination with" Lawrence, and caused Plaintiffs damage. (Id. ¶¶ 123, 124.)

## Discussion

In considering a motion to dismiss pursuant to Rule 12(b)(6), this Court must assume that all the facts alleged in the complaint are true, see **Conley v. Gibson**, 355 U.S. 41, 45-46 (1957); **In re Operation of Mo. River Sys. Litig.**, 418 F.3d 915, 917 (8th Cir. 2005), and must view the allegations in the complaint in the light most favorable to Plaintiffs, see **Scheuer v. Rhodes**, 416 U.S. 232, 236 (1974); **Casazza v. Kiser**, 313 F.3d 414, 418 (8th Cir. 2002). The issue is not whether the pleading party will ultimately prevail, but whether that party is entitled to offer evidence in support of its claim. See **Scheuer**, 416 U.S. at 236. Thus, "[d]ismissal is proper only when the complaint on its face reveals 'some insuperable bar to relief.'" **Duffy v. Landberg**, 133 F.3d 1120, 1122 (8th Cir. 1998) (quoting Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995)) (alteration added).

Count III: Tortious Interference with Contract. Federal Rule of Civil Procedure 8(a) mandates that a pleading setting forth a claim for relief include, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." **Swierkiewicz v. Sorema N.A.**, 534 U.S. 506, 514 (2002).  The standard of "a short and plain statement" requires that the opposing party be given fair notice of the basis of claim against it.  **Id.**.  See also **Shurgard Storage Centers v. Lipton-U.City LLC**, 394 F.3d 1041, 1046-47 (8th Cir. 2005) (applying the liberal notice requirements of Rule 8(a) to a claim that because the plaintiff had failed to plead unconscionability in its amended complaint the defendant was not able to conduct proper discovery to develop evidence on the issue; allegations that defendant had known and understood that plaintiff executed the contract with a specific belief and would not have entered contract but for that belief, placed defendant on sufficient notice of the nature of plaintiff's claim).

Seeking to dismiss Count III, DG&G argues that Plaintiffs failed to allege the necessary facts to demonstrate an "intentional interference" with the contract.

Under Missouri law, "[t]ortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages."  **Rice v. Hodapp**, 919 S.W.2d 240, 245 (Mo. 1996) (en banc) (alteration added).  Accord **Crowe v. Horizon Homes, Inc.**, 116 S.W.3d 618, 624 (Mo. Ct. App. 2003).  "A defendant is justified in inducing a contract's

breach, unless the defendant uses improper means to induce the breach." **Schott v. Beussink**, 950 S.W.2d 621, 628 (Mo. Ct. App. 1997). Improper means must be pled, **id.**, and "are those which are independently wrongful not withstanding injury caused by the interference," **Envtl. Energy Partners, Inc. v. Siemens Bldg. Tech., Inc.**, 178 S.W.3d 691, 703 (Mo. Ct. App. 2005).

Plaintiffs allege that DG&G knew that the subject cotton must meet industry standards of merchantability and had a duty to gin the cotton to meet those standards; that DG&G and Lawrence intentionally added excess water to the subject cotton during the packing process; and that DG&G intentionally interfered with the contractual relationship between Plaintiffs and Defendant Producers by doing so, thereby causing Defendant Producers to breach their contract with Plaintiffs. Thus, Plaintiffs have pled (1) a contract; (2) DG&G's knowledge of that contract; (3) DG&G's intentional interference with that contract; (3) a breach of the contract caused by DG&G's intentional acts; (4) the absence of justification, i.e., purposefully adding excess water; and (5) damages. These allegations put DG&G on fair notice of the basis of Plaintiffs' claim for tortious interference with their contracts or business expectancies.

DG&G's motion to dismiss Count III will be denied.

Count XIV: Civil Conspiracy. As noted above, Plaintiffs allege that DG&G and Lawrence, who was "at all times relevant hereto" president of DG&G and who had a controlling interest in DG&G, caused excess water to be placed in the cotton bales and conspired to artificially inflate the weight of the cotton. (Compl. ¶¶ 4, 55, 122.)

"A 'civil conspiracy' is an agreement or understanding between persons to do an unlawful act or to use unlawful means to do a lawful act." **Creative Walking, Inc. v. Am. States Ins. Co.**, 25 S.W.3d 682, 688 (Mo. Ct. App. 2000) (citing Oak Bluff Partners, Inc. v. Meyer, 3 S.W.3d 777, 780-81 (Mo. 1999) (en banc)). "To establish a claim for civil conspiracy, a party must prove: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby damaged." **Intertel, Inc. v. Sedgwick Claims Mgt. Servs., Inc.**, 204 S.W.3d 185, 203 (Mo. Ct. App. 2006). "The term unlawful, as it relates to civil conspiracy, is not limited to conduct that is criminally liable. Individuals associating for the purpose of causing or inducing a breach of contract is a basis for an unlawful conspiracy." **Schott** 950 S.W.2d at 627-28. "The conspirators must have 'a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'" **Creative Walking, Inc.**, 25 S.W.3d at 688 (quoting Oak Bluff Partners, Inc., 3 S.W.3d at 781). "However, 'an identity between agent and principal leads to a legal impossibility in the context of conspiracy.'" **Id.** (quoting Macke Laundry Serv. Ltd. v. Jetz Serv. Co., 931 S.W.2d 166, 176 (Mo. Ct. App. 1996)). This legal impossibility is based upon the principle that two entities that are not legally distinct cannot conspire with one another. **Id.** There is an exception to this rule that an individual cannot conspire with himself or herself. "Under general agency law, 'an agent can be liable for conspiracy with the principal if the agent acts out of a self-interest which goes beyond the agency relationship.'" **Creative Walking, Inc.**,

25 S.W.3d at 688 n.3 (quoting Metts v. Clark Oil & Ref. Corp., 618 S.W.2d 698, 702 (Mo. Ct. App. 1981)).

Although the allegations can easily be construed to be that excess water was added to the cotton to inflate the financial value of the cotton bales, there are no allegations at all from which it can be inferred that Lawrence completed this task in his individual capacity and not as the agent, president, and part-owner of DG&G. Indeed, there is no allegation from which it could reasonably be inferred that Lawrence was acting out of self interest or intended to personally benefit from the complained-of addition. Rather, it is specifically alleged only that at all times relevant Lawrence was the president or agent of DG&G.

Count XIV will be dismissed.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that D.G. and G., Inc.'s motion to dismiss is **DENIED** as to Count III and **GRANTED** as to Count XIV. [Doc. 25]

**IT IS FURTHER ORDERED** that Gaylon Lawrence's motion to dismiss Count XIV is **GRANTED**. [Doc. 27]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of March, 2007.