**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | |
|---|---|
| **STAPLE COTTON COOPERATIVE ASSOC. and BELTWIDE COTTON COOPERATIVE,** | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| **D.G. AND G., INC., et al.,** | ) ) |
| Defendants. | ) ) |
| ------------------------------------------------------------- | ) ) ) |
| **D.G. AND G., INC.,** | ) |
| Third-Party Plaintiff, | ) ) ) |
| vs. | ) ) |
| **L.P. BROWN, INC., et al.,** | ) ) ) |
| Third-Party Defendants. | ) |

Case No. 1:06cv0046 TCM

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of third-party defendant Specpac,[1] L.L.C. ("Specpac") to dismiss the claims against it in the second amended complaint of third-party plaintiff D.G. and G., Inc. ("DG&G"). [Doc. 132] Citing Federal Rules of Civil Procedure 12(b)(2) and Mo.Rev.Stat. § 537.762, Missouri's "innocent seller statute," Specpac argues that the Court lacks jurisdiction over it.

---

[1]This party is sometimes referred to as "SpecPac" and at other times as "Specpac." The Court will employ "Specpac," the spelling used by its manager and single member.

**Background**

In the seminal complaint in this action, Staple Cotton Cooperative Association and Beltwide Cotton Cooperative ("Plaintiffs") allege that DG&G damaged its cotton in the ginning process. DG&G, in turn, filed a third-party complaint against various defendants, including Specpac, alleging that these defendants either caused or contributed to cause the alleged damage to the cotton and should share in the responsibility, if any, with DG&G.

Specpac is a single-member South Carolina limited liability company engaged in the packaging business. (Skelton Aff. ¶ 3.) Specifically, it brokers and sells flexible films for use in packaging products. (Id.) Specpac does not have a registered agent in Missouri; is not licensed to do business in Missouri; does not own real estate in Missouri; does not own personal property in Missouri; does not have a bank account in Missouri; and does not maintain an office or telephone listing in Missouri. (Id. ¶¶ 4, 5.) Specpac does not maintain any employees or sales representatives in Missouri, nor has any employee of Specpac spoken with or met any DG&G employee or representative in connection with the alleged events at issue. (Id. ¶¶ 5, 10.)

Additionally, Specpac did not design or manufacture the bale bags at issue and never had title to or possession of any of the bags. (Id. ¶ 6.) Rather, the bags were manufactured by Flexsol Packaging Corporation of Pompano Beach ("Flexsol"), also a third-party defendant. (Id.) The manager and single member of Specpac, Stan Skelton, has no personal knowledge whether the bags ever reached DG&G. (Id.) Under its brokerage agreement with Flexsol, Specpac received a commission for the sale of the bags to another third-party defendant L.P. Brown Company, Inc. ("Brown"). (Id.) The Agreement provides that

Specpac represents to Flexsol "willingness and ability to provide adequate sales, promotional and merchandising of products . . . ." (Skelton Aff. Ex. A-1 at 1.) The Agreement further provides that "[Specpac] shall have no authority to contract on [Flexsol's] behalf or to make representations or warranties on [Flexsol's] behalf." (Id. § I.D.) (Alterations added.)

All sales of the bags were made directly from Flexsol to Brown; Specpac was not a party to the sales contract. (Skelton Aff. ¶ 7.) Shipments of the bags were made from Flexsol to Brown pursuant to an invoice from Flexsol to Brown. (Skelton Aff. ¶ ; Skelton Aff. Ex. A-2.) All of Specpac's activities in relation to the bale bags were undertaken in South Carolina. (Skelton Aff. ¶ 8.) Specpac has only one other sales office; it is in North Carolina. (Id.) Specpac had no connection to shipping the bags to Missouri and had no knowledge that the bags would end up on Missouri. (Id. ¶ 9.) No employee of Specpac has ever met or spoken with representatives of DG&G in person or by telephone. (Id. ¶ 10.)

## Discussion

"When personal jurisdiction is challenged, the plaintiff has the burden to show jurisdiction exists." **Burlington Indus., Inc. v. Maples Indus., Inc.**, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing Gould v. P. T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992)). To survive a motion to dismiss for lack of personal jurisdiction, "the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." **Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.**, 89 F.3d 519, 522 (8th Cir. 1996). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motion[] and in opposition thereto." **Dever v. Hentzen Coatings, Inc.**, 380 F.3d 1070, 1072 (8th Cir. 2004) (interim quotations omitted) (alteration

added). Accord **Stevens v. Redwing**, 146 F.3d 538, 543 (8th Cir. 1998). When determining whether the plaintiff has made such a showing, the court must view the evidence in the light most favorable to the plaintiff and must resolve factual conflicts in the plaintiff's favor. **Digi-Tel Holdings, Inc.**, 89 F.3d at 522.

The Court is guided by two primary rules when deciding whether to exercise personal jurisdiction over a nonresident defendant: first, the forum state's long-arm statute must be satisfied, and, second, due process must not be violated. **Id.** The "'ultimate objective'" of Missouri's long arm-statue[2] is "'to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.'" **Clune v. Alimak AB**, 233 F.3d 538, 541 (8th Cir. 2000) (quoting State v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)) (alteration added). Accord **Missouri ex rel. Nixon v. Beer Nuts, Ltd.**, 29 S.W.3d 828, 833 (Mo. Ct. App. 2000). "Accordingly, Missouri courts have interpreted the statute broadly to cover those cases where the Due Process Clause permits the assertion of personal

---

[2]Missouri's long arm statute, Mo.Rev.Stat. § 506.500, provides, in relevant part as follows:

1.        Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

    (1)    The transaction of any business within this state;

    (2)    The making of any contract within this state;

    (3)    The commission of a tortious act within this state; . . .

jurisdiction." **Clune**, 233 F.3d at 541. Thus, this Court's inquiry into whether the assertion of personal jurisdiction over Specpac satisfies Missouri's long-arm statute is coextensive with its inquiry into whether the assertion satisfies due process. See **Bell v. Imperial Palace Hotel/Casino, Inc.**, 200 F. Supp.2d 1082, 1085 (E.D. Mo. 2001); **Enterprise Rent-A-Car v. Stowell**, 137 F. Supp.2d 1151, 1155 (E.D. Mo. 2001); **Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc.**, 96 F. Supp.2d 919, 921 (E.D. Mo. 2000).

To satisfy due process, the plaintiff must demonstrate "minimum contacts" between the nonresident defendant and the forum state. **International Shoe Co. v. Washington**, 326 U.S. 310, 316 (1945); **Dever**, 380 F.3d at 1073. In determining whether such a showing has been made, this Court should exam "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." **Burlington Indus., Inc.**, 97 F.3d at 1102. The first three considerations are of primary importance. **Id.** Moreover, the underlying inquiry under this "minimum contracts" standard is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." **World-Wide Volkswagen Corp. v. Woodson**, 444 U.S. 286, 297 (1980). If defendant's activities do create sufficient minimum contacts, the Court must then consider whether the exercise of personal jurisdiction over that defendant offends "traditional notions of fair play and substantial justice." **International Shoe**, 326 U.S. at 316 (interim quotations omitted).

"The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction." **Dever**, 380 F.3d at 1073. "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement [of the Due Process Clause] is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out or relate to' those activities." **Burger King Corp. v. Rudzewicz**, 471 U.S. 462, 473 (1985) (alteration added). "General jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." **Lakin v. Prudential Securities, Inc.**, 348 F.3d 704, 707 (8th Cir. 2003) (alteration added) (interim quotations omitted). General jurisdiction may exist if the defendant's contacts with the forum state are continuous and systematic. **Helicopteros Nacionales de Columbia, S.A. v. Hall**, 466 U.S. 408, 416 (1984); **Epps v. Stewart Info. Servs. Corp.**, 372 F.3d 642, 648 (8th Cir. 2003); **Lakin**, 348 F.3d at 709.

In the instant case, it is specific jurisdiction that is at issue.

DG&G relies on the "stream of commerce" theory in support of its argument that this Court has jurisdiction over Specpac. "The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." **Asalhi Metal Ind. v. Superior Court of Calif.**, 480 U.S. 102, 112 (1987). On the other hand, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by customers in the

forum State." **World-Wide Volkswagon**, 444 U.S. at 297-98 (alteration added). DG&G argues that it was foreseeable that the bale bags would end up in Missouri; consequently, under the stream of commerce theory, jurisdiction attaches to Specpac. "'[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." **Id.** at 295 (alteration added). Foreseeability is not irrelevant, however. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." **Id.** at 297 (alteration added).

In support of their respective positions, the parties cite several Eighth Circuit Court of Appeals cases.

Personal jurisdiction under a stream of commerce theory was affirmed in **Barone v. Rich Bros. Interstate Display Fireworks Co.**, 25 F.3d 610 (8th Cir. 1993). In that case, a Japanese manufacturer of fireworks was held to be subject to personal jurisdiction on the grounds that its regional distributors placed the manufacturer's products into the stream of commerce throughout the Midwest, including the forum state. **Id.** at 613-14. The court noted that the case before it was "on all fours" with one cited by the plaintiff, **Giotis v. Apollo of the Ozarks, Inc.**, 800 F.2d 660 (7th Cir. 1986). In that case, the Seventh Circuit held that a *seller* at the head of a distribution network and "realiz[ing] the much greater economic benefit of multiple sales in distant forums" "satisfie[d] the requisite foreseeability of due process" by delivering its products into the stream of commerce, anticipating that

those products would be purchased by consumers in the forum state. **Id.** at 667 (alterations added). In the instant case, Specpac is neither a manufacturer nor the head of a distribution network. These cases are, therefore, unavailing.

Also cited is **Vandelune v. 4B Elevator Components Unltd.**, 148 F.3d 943 (8th Cir. 1998), in which a British manufacturer of a safety switch on a grain elevator argued that the forum state lacked personal jurisdiction because it had no office, agents, employees, or property in the state and did not advertise or solicit business there. The court held, however, that the manufacturer was subject to the personal jurisdiction of the court because the switch was designed for the "substantial" United States grain elevator market, the manufacturer placed its logo and identifying decal on each item sold and shipped the switch directly to the plaintiff company, and its employees attended technical support meetings 80 miles from the border of the forum state. **Id.** at 948. Moreover, 13% of its switches sold during a 12-month period were sold in the forum state. **Id.** "These are not 'attenuated, random, or fortuitous' contacts with the forum state." **Id.** These are also not the type of contacts present in this case. It is undisputed that Specpac did not manufacture, design, or place its logo or decals on any of the bags shipped to Missouri. Additionally, there is no evidence that any of Specpac's employees approached DG&G to advocate the sale of the bags.

In **Clune**, supra, a Swedish manufacturer and designer of construction hoists was sued in Missouri for the wrongful death of a construction worker. Citing **Barone**, supra, and **Vandelune**, supra, the court concluded that personal jurisdiction was proper in Missouri. 233 F.3d at 543. The defendant manufacturer and designer "did more than simply set a

product adrift in the international stream of commerce." **Id.** Rather, the defendant designed and manufactured its hoists for the United States market; had exclusive distribution agreements with United States distributors; placed its logo and identifying decals on the products; conducted training seminars in the United States for its technicians who serviced the hoists; sold 700 hoists in the United States, 20 to 40 of which made it into the forum state, Missouri; and provided sales brochures and instruction manuals to its distributors for use in promoting and servicing its hoists. **Id.** at 543-44. "Any of these facts, taken alone, might fall short of purposeful availment, however, when taken together they show that [the defendant] engaged in a series of activities that were designed to generate profits to the parent from its subsidiaries' sales across the United States." **Id.** at 544 (alteration added).

There are no comparable facts in the instant case.

Next cited is **Stanton v. St. Jude Med., Inc.**, 340 F.3d 690 (8th Cir. 2003), in which personal jurisdiction against a Massachusetts corporation that applied coating to fabric used in the manufacture of mechanical heart valves was found lacking in a suit filed in Nebraska by the widow of man who had died after surgical implantation of a valve. **Id.** at 692-93. The corporation applied the coating to bulk fabric supplied by the Minnesota manufacturer of the valves and shipped it back to that manufacturer. **Id.** at 693. The widow argued that the Massachusetts corporation should have anticipated being haled into any court in the United States because the manufacturer of the heart valves placed the valves into the national stream of commerce. **Id.** at 694. The court disagreed, finding that this was insufficient to show that the corporation availed itself of any of the laws of Nebraska, whose long-arm statute also is coextensive with the Due Process Clause, and that the corporation did not have

the necessary minimum contacts for personal jurisdiction. **Id.** "Whatever contacts the fabric processed by [the corporation] may have had with Nebraska were the results of the [manufacturer of the valves] and not of [the corporation]." **Id.** (alterations added). Similarly, the attenuated contact of Specpac with Missouri is the result of the action of other third-party defendants, not of its own making.

Specpac directs the Court to **Guinness Import Co. v. Mark VII Distrib., Inc.**, 153 F.3d 607 (8th Cir. 1998), where the court found personal jurisdiction over a Jamaican beer brewer lacking in a suit against the brewer and its importers by a distributor whose distribution agreement had been terminated when the brewer began using another importer. The court noted that there was no evidence that the brewer "did anything *in* Minnesota," whose long-arms statute also is coextensive with the Due Process Clause. **Id.** at 614. It was not licensed to do business there and did not maintain an bank account, phone number, mailing address, employees, or agents there. **Id.** There was no evidence that it had any control over the distribution of its products in the United States; "[a]ll distributor decisions were made by the distributor and the importer." **Id.** (alteration added). Thus, "[t]he trial court was correct in refusing to attribute the [forum] contacts of the distributors and importers to [the brewer]." **Id.** (alteration added). Here, DG&G argues that the activities of Flexsol in Missouri should be attributed to Specpac. Eighth Circuit Court of Appeals' precedent says otherwise.

Finally, in **Dever**, 380 F.3d at 1074-75, the court found insufficient jurisdictional contacts under the stream of commerce theory in a case in which the defendant chemical

manufacturer did not sell, distribute, or manufacture the products at issue in the lawsuit and had no offices, inventory, real estate, employees, bank accounts, personal property, or agents in the forum state. **Id.** at 1074. "The mere fact" that the manufacturer's other products were found in the forum state did not support personal jurisdiction. **Id.** at 1075.

In further support of its argument, DG&G relies on the National Cotton Council of American website disclosing that 90% of the cotton produced in the United States originates from fourteen states, including Missouri. National Cotton Council of America, United States Cotton Production, http://www.cotton.org/econ/word/detail.cfm (last visited Aug. 16, 2007). The remaining 10% is grown in three other states. (Id.) A detailed reading of that website discloses that 21,587,800 bales of cotton were produced in the United States in 2006. (Id.) Missouri produced 985,000 or 4.56% of the cotton in the United States that year. (Id.) In 2005, Missouri produced 3.61% of the cotton grown in the United States. (Id.) These statistics do not support DG&G's argument that Specpac should have known that the bale bags would end up in Missouri. To the contrary, there was less than a 5% chance that the bags would enter Missouri's stream of commerce.

The facts in this case are clearly distinguishable from the cases relied on by DG&G. Unlike the facts in **Barone** and **Vandelune**, there is no evidence in this case that Specpac made an effort to "pour" the bale bags into Missouri or that it manufactured, designed, or produced the bale bags at issue. Unlike the facts in **Clune**, there is no evidence in this case of a sophisticated distribution system originating with Specpac to place the bale bags into Missouri's stream of commerce. Like the facts in **Stanton**, there is no evidence that Specpac purposefully availed itself of the laws of Missouri. Rather, it is the action of Flexsol that

DG&G wishes to impute to Specpac in order to assert personal jurisdiction over it. See **Guinness Import Co.**, 153 F.3d at 614. DG&G has not met its burden of establishing personal jurisdiction; therefore, Specpac's motion to dismiss on jurisdictional grounds will be granted.[3]

Accordingly,

**IT IS HEREBY ORDERED** that the motion to dismiss of Specpac, L.L.C. is **GRANTED**. [Doc. 132]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of August, 2007.

---

[3] Because the Court finds personal jurisdiction lacking, it will not reach Specpac's "innocent seller" argument.