# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| STAPLE COTTON COOPERATIVE ASSOC. and BELTWIDE COTTON COOPERATIVE,<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>D.G. AND G., INC., et al.,<br><br>　　　　Defendants.<br>------------------------------------------------------------<br>D.G. AND G., INC.,<br><br>　　　　Third-Party Plaintiff,<br><br>　vs.<br><br>L.P. BROWN, INC., et al.,<br><br>　　　　Third-Party Defendants. | Case No. 1:06cv0046 TCM |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Federal Compress & Warehouse Company, Inc. ("FCWC") for partial summary judgment [Doc. 113] in the first amended complaint filed against it and other defendants by Staple Cotton Cooperative Association and Beltwide Cotton Cooperative (hereinafter collectively referred to as "Plaintiffs"). Also pending is FCWC's motion for oral argument on the first motion. [Doc. 117]

In their complaint, Plaintiffs allege, inter alia, that defendant D.G. and G., Inc. ("DG&G") breached its duty to properly gin Plaintiffs' cotton. They also allege that FCWC,

the warehouse operator to which DG&G delivered the ginned, baled, weighed, and bagged cotton for storage, failed to describe the condition of the cotton on the warehouse receipt (Count VI); failed to deliver merchantable quality cotton upon presentation of the warehouse receipt (Count VII); delivered water-packed cotton to Plaintiffs (Count VIII); negligently stored the cotton using "block stacking"[1] (Count IX); violated Mo.Rev.Stat. § 400.7-203 by issuing "clear" warehouse receipts, resulting in a misrepresentation of goods (Count X); negligently misrepresented goods by issuing receipts that failed to note that the bales contained excessive water (Count XI); violated Mo.Rev.Stat. § 400.7-403 by failing to deliver cotton that met the description in the receipt (Count XII); and violated Mo.Rev.Stat. § 400.7-204 by failing to use due care in wrapping and stacking the bales (Count XIII).

Counts VI, VII, VIII, and IX allege a violation of the United States Warehouse Act ("USWA"), 7 U.S.C. §§ 241-256.[2] Counts X, XI, XII, and XIII allege Missouri state common law and statutory violations.

## **Background**

FCWC is a warehouse operator licensed under the USWA. (Stip.[3] ¶ 1.) Its warehouses are located in Hayti and Portageville, Missouri, and are federally licensed. (Id.

---

[1]Count IX also includes a claim against FCWC for providing polyurethane bags to wrap the cotton knowing that the bales contained excessive water. FCWC is not presently moving for motion for summary judgment on this allegation in Count IX.

[2]Plaintiffs cite sections of the USWA, 7 U.S.C. §§ 257-273, which were deleted when the statute was amended in 2000. All portions of the outdated statute cited by Plaintiffs are contained in different sections of the amended statute.

[3]"Stip." refers to those of FCWC's Statement of Uncontroverted Facts which were not contested by Plaintiffs.

¶ 2.) Between September 19, 2002, and December 5, 2005, FCWC received cotton in its two warehouses that were ginned, baled, weighed, and bagged by DG&G prior to delivery. (Id. ¶ 3; Larry Lively Aff. ¶¶ 4, 5.) FCWC issued an electronic warehouse receipt for each of DG&G's bales, and coded such receipts to indicate "not graded upon the request of depositor." (Stip. ¶ 4.) When FCWC issued the warehouse receipts to DG&G, FCWC did not know the condition of the cotton lint in the DG&G bales. (Id. ¶ 5.) FCWC made no representation on its warehouse receipt or otherwise regarding the grade or condition of the DG&G cotton bales. (Id.)

FCWC used a block pile method of storing the DG&G bales at its warehouses. (Id. ¶ 6.) The manner in which FCWC stores bales of cotton in its warehouses is controlled, regulated, directed, inspected, and approved by the United States Department of Agriculture ("USDA"). (Id. ¶ 7.) FCWC is licensed with the USDA as a warehouse operator and such license provides for block pile storage of cotton. (Id. ¶ 7; FCWC Ex. A to Ex. 1 at 13.) FCWC has at all times relevant to this lawsuit complied with this provision of its Licensing Agreement with the USDA. (Stip. ¶ 7.) FCWC did not have any roof leaks or other condition that would result in moisture damage to the DG&G bales at either of its Missouri warehouses during the relevant time period. (Id. ¶ 8.)

## Discussion

Summary Judgment Standard. "Rule 56(c) [of the Federal Rules of Civil Procedure] 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of

proof at trial.'" **Erenberg v. Methodist Hosp.**, 357 F.3d 787, 791 (8th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)) (alteration added). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted).

The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). "A [party] facing a summary judgment motion cannot 'get to the jury without any significant probative evidence tending to support the complaint[,]'" but must "make a sufficient showing on every essential element of its claim on which it bears the burden of proof." **Buettner v. Arch Coal Sales Co.**, 216 F.3d 707, 718 (8th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)) (alterations added). And, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998). "'Evidence, not contentions, avoids summary judgment.'" **Larry v. Potter**, 424 F.3d 849, 851 (8th Cir. 2005) (quoting Zubaidy v. TEK Indus., Inc., 406 F.3d 1030, 1036 (8th Cir. 2005)). See also **Stanback v. Best Diversified Prods., Inc.**, 180 F.3d

903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion).

Counts X through XIII: Missouri Statutory and Common Law Claims. FCWC moves for summary judgment on these claims because, according to FCWC, the USWA preempts these state causes of action.

"Preemption, which is grounded in the Supremacy Clause of the Constitution, U.S. Const. Art. VI, requires that a state law 'give way' when it 'conflicts with or frustrates federal law.'" **Fletcher v. Burlington Northern & Santa Fe Ry. Co.**, 474 F.3d 1121, 1125 (8th Cir. 2007) (quoting Chapman v. Lab One, 390 F.3d 620, 624 (8th Cir. 2004)). "A state law is preempted if (1) Congress explicitly prohibits state regulation in an area; (2) Congress implicitly prohibits state regulation by pervasively occupying the area; (3) state law directly conflicts with federal law; or (4) a federal agency, acting within the scope of its delegated authority, intends its regulations to have preemptive effect." **Id.** at 1125-26 (citing Noe v. Henderson, 456 F.3d 868, 870 (8th Cir. 2006)).

Title 7 U.S.C. §§ 242(a)(1), (2), and (3) provide that:

The Secretary [of Agriculture] shall have exclusive power, jurisdiction, and authority, to the extent that this chapter applies, with respect to--

(1) each warehouse operator licensed under this chapter;

(2) each person that has obtained an approval to engage in an activity under this chapter; and

(3) each person claiming an interest in an agricultural product by means of a document or receipt subject to this chapter.

(Alteration added.)

The Secretary of Agriculture issues warehouse operators licenses if the Secretary determines that the warehouse is suitable for proper storage of the agricultural products to be stored and if the warehouse operator agrees to comply with the USWA and its regulations. 7 U.S.C. §§ 242(j)(1) and (2). The Secretary "may cooperate with officers and employees of a State who administer or enforce State laws relating to warehouses . . ." and may "enter into cooperative agreements with States to perform activities authorized under the [USWA]." 7 U.S.C. §§ 242(m)(1) and (2) (alteration added). No such agreement is at issue in the instant case.

"The [USWA], as originally enacted in 1916, made federal legislation in this field subservient to state regulation." **Rice v. Santa Fe Elevator Corp.**, 331 U.S. 218, 222 (1947) (alteration added). The USWA was amended in 1931 to mandate that "'the power, jurisdiction, and authority' of the Secretary conferred under the Act 'shall be exclusive with respect to all persons' licensed under the Act." **Id.** at 233 (quoting 7 U.S.C. § 269, recodified in 2000 as 7 U.S.C. § 242(a)). This amendment made clear "that the matters regulated by the [USWA] cannot be regulated by the States . . . ." **Id.** at 234 (alterations added). Thus, "warehousemen electing to come under the [USWA] need serve but one master, and that one the [USDA]." **Id.** (alterations added).

The question of federal preemption is then "whether the matter on which the State asserts the right to act is in any way regulated by the [USWA]." **Id.** at 236 (alteration added). If there is a conflict, the federal scheme prevails, and this is true whether or not that scheme "is a more modest, less pervasive regulatory plan than that of the State." **Id.**

In **Heart of America Grain Inspection Serv., Inc. v. Missouri Dep't of Agriculture**, 123 F.3d 1098 (8th Cir. 1997), the court resolved competing requests for a declaratory judgment on whether the position of the Missouri Department of Agriculture on third-party supervision of grain weighing and certification of grain weights was preempted by the USWA. The private parties supervising such services did so in warehouses licensed under the USWA and were informed by the state agency that it had the exclusive right to weigh and supervise the weighing of grain in all warehouses in the state. **Id.** at 1101. The court noted that grain warehousing was traditionally a matter of state concern. **Id.** at 1103. However, the 1931 amendment to the USWA meant that "state grain warehouse laws can be preempted even when they do not collide with a specific federal law; no direct conflict is required." **Id.** 1103-04 (citing Rice, 331 U.S. at 232). Thus, because Congress intended to preempt grain weighing in federally licensed warehouses and because certification of grain weights was within the field of grain weighing, any state attempt to regulate grain certification, although not in direct conflict with the USWA, was preempted. **Id.** at 1104.

In Count X, Plaintiffs allege that although FCWC knew or should have known that the baled cotton received from DG&G contained excess moisture, it issued "clean" warehouse receipts which failed to identify any defects in the cotton. (Am. Compl. ¶¶ 104-05.) Plaintiffs relied on the "clean" receipts and were damaged. (Id. ¶ 106.) Plaintiffs allege that FCWC's action violated Mo.Rev.Stat. § 400.7-203.[4] These allegations of issuing a

---

[4]This section, part of the Uniform Commercial Code, provides, in relevant part:

A party to or purchaser for value in good faith of a document of title . . . relying in either case upon the description therein of the goods may recover from the issuer

misleading "clean" receipt give rise in Count XI to a claim for negligence. (Am. Compl. ¶¶ 107-12.) In Count XII, Plaintiffs allege that FCWC had a duty under § 400.7-203 to deliver the goods described in its warehouse receipt and that the goods that were delivered, i.e., the cotton with the excess moisture, did not. (Am. Compl. ¶¶ 113-16.) Finally, in Count XIII, Plaintiffs allege that FCWC failed to exercise due care in wrapping the cotton bales, specifically by providing polyethylene bags to wrap bales with excess water, and "block stacking" the cotton bales, in violation of Mo.Rev.Stat. § 400.7-204.[5] (Am. Compl. ¶¶ 117-20.)

Title 7 U.S.C. § 250 catalogs federal statutory law relating to warehouse receipts for agricultural products under the USWA. Section 250(a) requires that, at the request of the depositor of the products, the warehouse operator issue a receipt "as prescribed by the Secretary." Section 250(c) provides that the warehouse receipt "shall contain such information . . . as the Secretary may require by regulation." Title 7 U.S.C. § 251 requires delivery of the agricultural product upon demand by the holder of the warehouse receipt.

The Licensing Agreement between FCWC and the USDA provides that:

> To the extent that the USWA, the regulations at 7 C.F.R. Part 735, this Agreement and addenda conflict with the laws, regulations, or practices of various states, localities or municipalities, the USWA, regulations at 7 C.F.R. Part 735, this Agreement and addenda prevail.

(FCWC Ex. A to Ex. 1 at 1.)

---

damages caused by the nonreceipt or misdescription of the goods . . . .

Mo.Rev.Stat. § 400-7.203 (alterations added).

[5]Section 400.7-204, part of the Uniform Commercial Code, defines the duty of care of a warehouseman and sets perimeters for the contractual limitation of a warehouseman's liability.

Under the title "Warehouse Receipts," the Licensing Agreement further provides that the "Warehouse Operator," FCWC, agrees to "issue warehouse receipts for any cotton received or stored in a warehouse at the request of a depositor or lawful owner[.]" (Id. at 15; alteration added.) Additionally, among other requirements, the warehouse operator must "deal in a fair and reasonable manner with persons storing . . . cotton in their warehouse if . . . tendered to the warehouse in a suitable condition for warehousing, and [ ] tendered in a manner consistent with the ordinary and usual course of business." (Id. at 8; alterations added.) The Agreement also delineates the information that must be included on warehouse receipts, including multiple bale electronic warehouse receipts. (Id. at 16-19; 22-23.)

Clearly, the claims in Counts X, XI, and XII for violations of Missouri statutory and common law are all based on the warehouse receipt and its alleged deficiencies. Warehouse receipts, however, are part of the USWA and the approved licensing agreement with the USDA. As noted above, that federal scheme prevails whether or not it "is a more modest, less pervasive regulatory plan than that of the State." **Rice**, 331 U.S. at 236. These Counts are, therefore, preempted by federal law. Summary judgment will be granted in favor of FCWC.

The allegations in Count XIII are not premised on the warehouse receipts but on FCWC's use of polyethylene bags to wrap the cotton bales and of block stacking to store them. The claim is that these methods violate Missouri statute.

Title 7 U.S.C. § 242(g) provides that "the Secretary [of Agriculture] may prescribe the duties of a warehouse operator operating a warehouse licensed under [the USWA] with respect to the warehouse operator's care of and responsibility for agricultural products stored

or handled by the warehouse operator." (Alterations added.) The Licensing Agreement between FCWC and the USDA permits, under certain requirements not at issue, "block piling storage of cotton." (FCWC Ex. A to Ex. 1 at 13.) Moreover, 7 C.F.R. Part 735 contains the regulations that set forth the terms and conditions under which the Secretary of Agriculture administers the USWA and also sets forth the standards, terms, and conditions which a USWA licensee must meet. 7 C.F.R. § 735.1(a). "Compliance with State laws relating to the warehousing, grading, weighing, storing, merchandising or other similar activities is not required with respect to activities engaged in by a warehouse operator in a warehouse subject to a license issued in accordance with this part." 7 C.F.R. § 735.1(c). The regulations further provide that a "warehouse operator must at all times . . . exercise such care in regard to stored and non-storage agricultural products in their custody as required in the applicable licensing agreement." 7 C.F.R. § 735.105 (alteration added).

The allegations in Count XIII that FCWC violated a state mandated standard of care by using polyethylene bags and block stacking are clearly preempted by the USWA, the implementing regulations, and the Licensing Agreement. Summary judgment will also be granted on this Count.

<u>Counts VI, VII, VIII, and IX: USWA Claims.</u> Plaintiffs allege in Count VI that the warehouse receipt failed to describe the condition of the cotton, in violation of the USWA, 7 U.S.C. § 250; in Count VII that FCWC failed to deliver cotton as described on the warehouse receipt, in violation of USWA, 7 U.S.C. § 251; and in Count VIII that the FCWC misdescribed the cotton in the receipt and, therefore, delivery of the cotton violated the USWA, 7 U.S.C. §§ 250 and 251. Additionally, in Count IX, Plaintiffs allege that FCWC

violated its duty of care as a warehouse operator by providing polyethylene bags to wrap the cotton, knowing there was excess moisture in the bales, and by using block stacking to store the baled cotton. (Am. Compl. ¶¶ 99-102.) As noted above, FCWC is not seeking summary judgment on the polyethylene bag claim.

Neither the USWA, the regulations, nor the Licensing Agreement require that the warehouse receipt accurately describe the quality, condition, or weight of the cotton. As described above, 7 U.S.C. § 250(a) requires that the warehouse operator issue a warehouse receipt prescribed by the Secretary of Agriculture. This receipt is to include, among other information, "a space designated for the grade and/or classification" and "[i]f, at the request of a depositor, a Warehouse Operator issues a receipt omitting the statement of grade, such receipt shall have clearly and conspicuously stamped or written on the face thereof . . . the following: "Not graded upon the request of the depositor." (FCWC Ex. A to Ex. 1 at 16, 18, 22-23.) FCWC did code its receipt to state so. (Stip. ¶ 4.)

Although the regulations provide that the warehouse operator must "[n]ot issue a warehouse receipt until the quality, condition and weight of such an agricultural product is ascertained by a licensed inspector and weigher," 7 C.F.R. § 735.300(b)(3) (alteration added), there is no requirement that this information be placed upon the warehouse receipt. To the contrary, the regulations specifically provide that when issuing a receipt and purposefully omitting any information, the warehouse operator must notate the blank space to show such intent. 7 C.F.R. § 735.300(b)(6). Nothing in the USWA, Licensing Agreement, or regulations impose a responsibility on the warehouse operator to provide warranties on the stored cotton nor to describe the weight, quantity, or condition of the

cotton on the receipt; therefore, the failure to do so, as alleged in Counts VI, VII, and VIII, does not describe a violation of the USWA.

Count IX alleges that FCWC failed to use proper care in using block stacking to store the cotton, knowing that the bales contained excessive water, and provided polyethylene bags to wrap the cotton. First, there is no evidence before the Court that FCWC knew or should have known that the bales contained excessive water. It is undisputed that the bales were ginned, baled, weighed, compressed, and bagged by DG&G prior to delivery to FCWC. The licensing agreement permits the use of block pile storage of cotton. (FCWC Ex. A to Ex. 1 at 13.) The regulations provide that the warehouse operator exercise such care of the stored product as required by the applicable licensing agreement. 7 C.F.R. § 735.105. FCWC complied with the Licensing Agreement, the regulations, and the USWA by storing the cotton bales in block pile fashion. Because there are no facts in dispute nor evidence that FCWC violated any regulation, statute, or agreement, summary judgment is granted in favor of FCWC on the block stacking claim in Count IX.

## Conclusion

In response to FCWC's properly-supported motion for partial summary judgment,[6] Plaintiffs have failed to establish a genuine issue of material fact or dispute of law as to the

---

[6] The Court notes that Plaintiffs' opposition to the motion for partial summary judgment focuses on their contention that it would be undesirable to have inconsistent positions taken by this Court in the instant litigation and by the United States District Court for the Western District of Tennessee in Allenberg Cotton Co. v. Staple Cotton Cooperative Ass'n, No. 2:06cv2449. Staple Cotton is the defendant warehouse operator in the Tennessee case and has presented a similar argument to FCWC's in support of its motion to dismiss or transfer that case. The Court further notes that, on July 25, 2007, the court in Allenberg agreed with Staple Cotton that the case should be transferred to the Northern District of Mississippi and, consequently, did not reach their arguments in support of dismissal.

USWA claims in Counts VI, VII, and VIII, the preempted state law claims in Counts X through XIII, inclusive, and the block stacking claim in Count IX. These claims against FCWC are dismissed. Plaintiffs' claim against FCWC in Count IX based on allegations it "provid[ed] polyethylene bags to wrap the bales, knowing that there was excess water in the bales[,]" remains pending. (Am. Compl. ¶ 101(a); alterations added.) Accordingly,

**IT IS HEREBY ORDERED** that FCWC's motion for partial summary judgment is **GRANTED** as set forth above. [Doc. 113]

**IT IS FURTHER ORDERED** that the motion for oral argument is **DENIED** as moot. [Doc. 117]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of August, 2007.