# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| STAPLE COTTON COOPERATIVE ASSOC. and BELTWIDE COTTON COOPERATIVE, <br><br> Plaintiffs, <br><br> vs. <br><br> D.G. AND G., INC., et al., <br><br> Defendants. <br> ------------------------------------------------- <br> D.G. AND G., INC., <br><br> Third-Party Plaintiff, <br><br> vs. <br><br> L.P. BROWN, INC., et al., <br><br> Third-Party Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) **Case No. 1:06cv0046 TCM** ) ) ) ) ) ) ) ) ) ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of a third-party defendant, Vomax Pty Ltd. ("Vomax"), to dismiss for lack of personal jurisdiction the claims against it in the second amended complaint of third-party plaintiff D.G. and G., Inc. ("DG&G"). [Doc. 173]

**Background**

Staple Cotton Cooperative Association and Beltwide Cotton Cooperative ("Plaintiffs") allege that DG&G damaged its cotton in the ginning process. DG&G, in turn, alleges that various third-party defendants, including Vomax, either caused or contributed to cause the alleged damage to the cotton and should share in the responsibility, if any, with DG&G.

Vomax specifically should also be held liable because it designs, manufactures, and sells a device used to check the moisture content of baled cotton. (DG&G Compl. ¶ 158.) This device was sold to DG&G by Vomax's United States distributor,[1] Samuel Jackson, Inc. ("Samuel Jackson") and was installed in accordance with Vomax's specifications[2] and regularly calibrated by Samuel Jackson. (Id. ¶¶ 159-60.) The device did not accurately read the moisture content of DG&G's cotton bales and proximately caused any alleged damage to that cotton. (Id. ¶¶ 163, 167.) DG&G seeks contribution from Vomax for any judgment entered against DG&G on theories of negligence, strict liability for a defective product, strict liability for a failure to warn, breach of implied warranty of fitness for a particular purpose, and breach of implied warranty of merchantability. (Compl. Counts XXI-XXV.)

Vomax is an Australian company with its principal place of business in Australia. (Compl. ¶ 7; Kelly Aff. ¶ 3.) Richard Kelly, the executive director of Vomax, avers that Vomax does not have a registered agent in Missouri; is not registered to do business in Missouri; does not own real estate in Missouri; does not own personal property in Missouri; does not have a bank account in Missouri; and does not maintain an office or telephone listing in Missouri. (Id. ¶ 10.) Vomax does not maintain any employees or sales

---

[1] There is a dispute of fact as to whether Samuel Jackson is a distributor of relevant Vomax products or is a mere purchaser. Mr. Kelly avers that Samuel Jackson is neither a distributor nor an agent of Vomax. (Kelly Aff. ¶ 7.) However, Vomax's website lists Samuel Jackson as a distributor. The Court will assume for the purposes of the instant motion only that Samuel Jackson is a distributor of Vomax's products.

[2] DG&G alleges in its claims against Samuel Jackson that it installed the device according to Samuel Jackson's specifications.

representatives in Missouri, nor has any officer or agent of Vomax been to Missouri. (Id. ¶ 11.)

At all times relevant, Vomax designed, manufactured, and sold "microwave-based instrumentation and equipment," including "the Model 851B device."[3] (Id. ¶¶ 4, 5.) Vomax has sold this device to Samuel Jackson, a Lubbock, Texas company. (Id. ¶ 6.) Samuel Jackson and another Lubbock, Texas company, Beltwide Industries, were listed on Vomax's website as United States distributors for "[a]ll states except California." (DG&G Ex. A at 5.)

Samuel Jackson sold Vomax 851B Model to DG&G with its own serial number, "Sam Jackson serial number 7803." (DG&G Ex. B at 7.) "The standard Samuel Jackson, Inc. control package was added to it." (Id. at 19.) This was one of two Vomax devices that it sold to a Missouri customer in three years. (Id. at 11.) Twenty-five of the devices were sold to customers in other states. (Id.)

Mr. Kelly avers, without contradiction, that "[t]here is no formal agreement of any kind between Vomax and Samuel Jackson." (Kelly Aff. ¶ 7.) "Any and all contacts and communications relating to the sale of the Vomax device to Samuel Jackson occurred in the State of Texas and/or the country of Australia." (Id. ¶ 14.) "The Vomax device was shipped from South Australia to Samuel Jackson in Texas." (Id. ¶ 15.) Samuel Jackson sold the Vomax device to DG&G and serviced it. (DG&G Ex. B at 7-10.) "Vomax had no involvement in or knowledge of any sale or service between Samuel Jackson and DG&G."

---

[3]Vomax is in liquidation proceedings in Australia.

(Kelly Aff. ¶ 9.) The first contact Vomax had with DG&G was when this action was initiated. (Id.)

## Discussion

"When personal jurisdiction is challenged, the plaintiff has the burden to show jurisdiction exists." **Burlington Indus., Inc. v. Maples Indus., Inc.**, 97 F.3d 1100, 1102 (8th Cir. 1996) (citing Gould v. P. T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir. 1992)).[4] To survive a motion to dismiss for lack of personal jurisdiction, "the plaintiff need only make a prima facie showing of personal jurisdiction over the defendant." **Digi-Tel Holdings, Inc. v. Proteq Telecommunications, Ltd.**, 89 F.3d 519, 522 (8th Cir. 1996). "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motion[ ] and in opposition thereto." **Dever v. Hentzen Coatings, Inc.**, 380 F.3d 1070, 1072 (8th Cir. 2004) (interim quotations omitted) (alteration added). When determining whether the plaintiff has made such a showing, the court must view the evidence in the light most favorable to the plaintiff and must resolve factual conflicts in the plaintiff's favor. **Digi-Tel Holdings, Inc.**, 89 F.3d at 522.

The Court is guided by two primary rules when deciding whether to exercise personal jurisdiction over a nonresident defendant: first, the forum state's long-arm statute must be satisfied, and, second, due process must not be violated. **Id.** The "'ultimate objective'" of

---

[4]Much of the Court's discussion is taken from an earlier Memorandum and Order on another third-party defendant's motion to dismiss for lack of jurisdiction. To the extent that the discussion is equally appropriate as to the pending motion, it will be repeated.

Missouri's long arm-statue[5] is "'to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.'" **Clune v. Alimak AB**, 233 F.3d 538, 541 (8th Cir. 2000) (quoting State v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)) (alteration added). Accord **Missouri ex rel. Nixon v. Beer Nuts, Ltd.**, 29 S.W.3d 828, 833 (Mo. Ct. App. 2000). "Accordingly, Missouri courts have interpreted the statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." **Clune**, 233 F.3d at 541. Thus, this Court's inquiry into whether the assertion of personal jurisdiction over Vomax satisfies Missouri's long-arm statute is coextensive with its inquiry into whether the assertion satisfies due process. See **Bell v. Imperial Palace Hotel/Casino, Inc.**, 200 F. Supp.2d 1082, 1085 (E.D. Mo. 2001); **Enterprise Rent-A-Car v. Stowell**, 137 F. Supp.2d 1151, 1155 (E.D. Mo. 2001); **Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc.**, 96 F. Supp.2d 919, 921 (E.D. Mo. 2000).

---

[5]Missouri's long arm statute, Mo.Rev.Stat. § 506.500, provides, in relevant part as follows:

1.  Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

    (1)  The transaction of any business within this state;

    (2)  The making of any contract within this state;

    (3)  The commission of a tortious act within this state; . . .

To satisfy due process, the plaintiff must demonstrate "minimum contacts" between the nonresident defendant and the forum state. **International Shoe Co. v. Washington**, 326 U.S. 310, 316 (1945); **Dever**, 380 F.3d at 1073. The underlying inquiry under this "minimum contracts" standard is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." **World-Wide Volkswagen Corp. v. Woodson**, 444 U.S. 286, 297 (1980). In determining whether such a showing has been made, this Court should exam "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." **Burlington Indus., Inc.**, 97 F.3d at 1102. The first three considerations are of primary importance. **Id.** If defendant's activities do create sufficient minimum contacts, the Court must then consider whether the exercise of personal jurisdiction over that defendant offends "traditional notions of fair play and substantial justice." **International Shoe**, 326 U.S. at 316 (interim quotations omitted).

"The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction." **Dever**, 380 F.3d at 1073. "General jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." **Lakin v. Prudential Securities, Inc.**, 348 F.3d 704, 707 (8th Cir. 2003) (alteration added) (interim quotations omitted). General jurisdiction may exist if the defendant's contacts with the forum state are continuous and systematic. **Helicopteros Nacionales de Columbia, S.A. v. Hall**, 466 U.S.

408, 416 (1984); **Epps v. Stewart Info. Servs. Corp.**, 372 F.3d 642, 648 (8th Cir. 2003); **Lakin**, 348 F.3d at 709. There are no such contacts in the instant case.

Specific jurisdiction may exist over a nonresident defendant who has not consented to suit in the forum state, if that "defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out or relate to' those activities." **Burger King Corp. v. Rudzewicz**, 471 U.S. 462, 473 (1985) (alteration added).

DG&G argues that Vomax has the necessary minimum contacts with Missouri to establish specific jurisdiction because (a) it manufactured a product that caused damage in Missouri; (b) Samuel Jackson is one of two distributors of Vomax products that served an exclusive territory, i.e., 49 of the 50 states, including Missouri; and (c) Vomax provided that distributor with marketing manuals, operation manuals, installation guides, and tech manuals and also conducted a seminar in Texas.

"The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." **Asahi Metal Ind. v. Superior Court of Calif.**, 480 U.S. 102, 112 (1987) (Justice O'Connor's plurality opinion). Justice Brennan, joined in his opinion by three other Justices, opined that no additional contact is required when the defendant places goods in "the regular and anticipated flow of products from manufacture to distribution to retail sales." **Id.** at 117.

Under either standard, the result is the same. Under Justice O'Connor's "additional contact" standard, DG&G's argument that this Court has specific jurisdiction over an Australian company based only on allegations that it manufactured a product that caused

damage to baled cotton in Missouri is clearly unavailing. See e.g., **Dever**, 380 F.3d at 1074-75 (finding insufficient jurisdictional contacts under the stream of commerce theory in a case in which the defendant chemical manufacturer did not sell, distribute, or manufacture the products at issue in the lawsuit and had no offices, inventory, real estate, employees, bank accounts, personal property, or agents in the forum state; "[t]he mere fact" that the manufacturer's other products were found in the forum state did not support personal jurisdiction); **Meridian Enter. Corp. v. C/Base Inc.**, 2005 WL 1983801 (E.D. Mo. 2005) (finding that no jurisdiction existed in Missouri over Georgia corporations that sold prepaid debit card services through contracts negotiated in Georgia and that did not distribute cards to public at large; corporation's clients distributed the cards, but the corporation had no control over such distribution).

For the reasons discussed below, personal jurisdiction is still lacking under Justice Brennan's "regular and anticipated flow of products" standard.

DG&G contends that it was clearly anticipated that a Vomax device would end up in Missouri because one of Vomax's distributors serviced an exclusive sales territory, including Missouri and 48 other states, and Missouri is one of fourteen states that produce 98% of the cotton in the United States.[6] A "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products

---

[6]As the Court noted in its previous Memorandum and Order, a detailed reading of the website of the National Cotton Council of America, United States Cotton Production, http://www.cotton.org/econ/word/detail.cfm (last visited Aug. 16, 2007), discloses that less than 5% of the cotton produced in the United States in 2005 and 2006 was grown in Missouri. The amount of cotton grown in the remaining thirteen states is irrelevant.

into the stream of commerce with the expectation that they will be purchased by customers in the forum State." **World-Wide Volkswagon**, 444 U.S. at 297-98. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." **Id.** at 297 (alteration added).

In **Barone v. Rich Bros. Interstate Display Fireworks Co.**, 25 F.3d 610, 613-14 (8th Cir. 1993), a Japanese manufacturer of fireworks was held to be subject to personal jurisdiction on the grounds that its regional distributor placed the manufacturer's products into the stream of commerce in five Midwestern states, including the forum state. This distributor was one of nine in six states – three of which were in the Midwest – and resold 16% of the fireworks purchased from the manufacturer in the forum state. The court noted that the location of the manufacturer's distributors "suggest[ed] an effort to reach much of the country through a limited number of regional distributors." **Id.** at 613 (alteration added). On the other hand, Vomax has three distributors, one of which services only California, a non-cotton producing state. The other two are both based in the same town in Texas and service the remaining 49 states. During a three-year period, the one, Samuel Jackson, purchased 27 Vomax devices, two of which, approximately 7%, were resold by Samuel Jackson to Missouri customers. There is no evidence that Vomax had any control or input into where its devices were sold. Nor can it have reasonably anticipated that its devices would end up in Missouri based on Missouri's inclusion in the fourteen states that produce

98% of the cotton grown in the United States. <u>See</u> note 6, supra. Moreover, the device at issue is resold to cotton gins, not cotton producers.

A British manufacturer was found to be subject to personal jurisdiction in **<u>Vandelune v. 4B Elevator Components Unltd.</u>**, 148 F.3d 943 (8th Cir. 1998). In that case, the manufacturer of a safety switch on a grain elevator argued that the forum state lacked personal jurisdiction because it had no office, agents, employees, or property in the state and did not advertise or solicit business there. The court held, however, that the manufacturer was subject to the personal jurisdiction of the court because the switch was designed for the "substantial" United States grain elevator market, the manufacturer placed its logo and identifying decal on each item sold and shipped the switch directly to the plaintiff company, and its employees attended technical support meetings 80 miles from the border of the forum state. **Id.** at 948. Also, 13% of its switches sold during a 12-month period were sold in the forum state. **Id.** "These are not 'attenuated, random, or fortuitous' contacts with the forum state." **Id.** These are also not the type of contacts present in this case. The device at issue was added to "[t]he standard Samuel Jackson, Inc. control package" and carried that company's serial number. Only 7% of the Vomax devices, or two, sold by Samuel Jackson during a three-year period were sold in Missouri. The device at issue was not shipped directly from Vomax to DG&G; indeed, Vomax did not know of the ultimate destination of the device until this action was filed. No DG&G employees attended any technical support meetings held by Vomax, and the only seminar conducted by Vomax was held in Texas.

In **<u>Clune</u>**, supra, a Swedish manufacturer and designer of construction hoists was sued in Missouri for the wrongful death of a construction worker. Citing **<u>Barone</u>**, supra, and

**Vandelune**, supra, the court concluded that personal jurisdiction was proper in Missouri. 233 F.3d at 543. The defendant manufacturer and designer "did more than simply set a product adrift in the international stream of commerce." **Id.** Rather, the defendant designed and manufactured its hoists for the United States market; had exclusive distribution agreements with United States distributors; placed its logo and identifying decals on the products; conducted training seminars in the United States for its technicians who serviced the hoists; sold 700 hoists in the United States, 20 to 40 of which made it into the forum state, Missouri; and provided sales brochures and instruction manuals to its distributors for use in promoting and servicing its hoists. **Id.** at 543-44. "Any of these facts, taken alone, might fall short of purposeful availment, however, when taken together they show that [the defendant] engaged in a series of activities that were designed to generate profits to the parent from its subsidiaries' sales across the United States." **Id.** at 544 (alteration added). The only arguably similar circumstances between this case and **Clune** is the percentage of products that end up in the forum state[7] and the distribution of manuals to the distributor. These two facts fall far short of purposeful availment.

In a case similar to the instant case, **Stanton v. St. Jude Med., Inc.**, 340 F.3d 690 (8th Cir. 2003), personal jurisdiction against a Massachusetts corporation that applied coating to fabric used in the manufacture of mechanical heart valves was found lacking in a suit filed in Nebraska by the widow of man who had died after surgical implantation of a valve. **Id.** at 692-93. The corporation applied the coating to bulk fabric supplied by the

---

[7]Approximately 7% of the Vomax devices sold by Samuel Jackson ended up in Missouri; approximately 5% of the hoists ended up in the forum state.

Minnesota manufacturer of the valves and shipped it back to that manufacturer. **Id.** at 693. The widow argued that the Massachusetts corporation should have anticipated being haled into any court in the United States because the manufacturer of the heart valves placed the valves into the national stream of commerce. **Id.** at 694. The court disagreed, finding that this was insufficient to show that the corporation availed itself of any of the laws of Nebraska, whose long-arm statute also is coextensive with the Due Process Clause, and that the corporation did not have the necessary minimum contacts for personal jurisdiction. **Id.** "Whatever contacts the fabric processed by [the corporation] may have had with Nebraska were the results of the [manufacturer of the valves] and not of [the corporation]." **Id.** (alterations added). Similarly, the attenuated contact of Vomax with Missouri is the result of Samuel Jackson adding its control package to the Vomax device sold to Samuel Jackson, not DG&G, by Vomax and shipping the device with its own serial number to DG&G.

Also relevant to the instant case is **Guinness Import Co. v. Mark VII Distrib., Inc.**, 153 F.3d 607 (8th Cir. 1998). Personal jurisdiction was found lacking in a suit against a Jamaican beer brewer and its importers by a distributor whose distribution agreement had been terminated when the brewer began using another importer. The court noted that there was no evidence that the brewer "did anything *in* Minnesota," whose long-arms statute also is coextensive with the Due Process Clause. **Id.** at 614. It was not licensed to do business there and did not maintain an bank account, phone number, mailing address, employees, or agents there. **Id.** There was no evidence that it had any control over the distribution of its products in the United States; "[a]ll distributor decisions were made by the distributor and

the importer." **Id.** (alteration added). Thus, "[t]he trial court was correct in refusing to attribute the [forum] contacts of the distributors and importers to [the brewer]." **Id.** (alteration added). Samuel Jackson sold and shipped the Vomax device to DG&G and serviced it. There is no support for its activities being attributed to Vomax.

For the foregoing reasons, DG&G has not met its burden of establishing personal jurisdiction over Vomax. Accordingly,

**IT IS HEREBY ORDERED** that the motion of Vomax Pty Ltd. to dismiss for lack of personal jurisdiction is **GRANTED**. [Doc. 173]

**IT IS FURTHER ORDERED** that the claims of D.G. and G., Inc., against Vomax Pty Ltd. are DISMISSED without prejudice.

**IT IS FINALLY ORDERED** that the motion of DG&G for leave to file a surreply in opposition to a motion to dismiss by former third-party defendant SpecPac, LLC, is **DENIED** as moot. [Doc. 202]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of October, 2007.