| | | |
|---|---|---|
| **STAPLE COTTON COOPERATIVE ASSOC. and BELTWIDE COTTON COOPERATIVE,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | |
| **D.G. AND G., INC., et al.,** | ) ) | |
| **Defendants.** | ) ) | |
| ------------------------------------------------------------ | ) ) | **Case No. 1:06cv0046 TCM** |
| **D.G. AND G., INC.,** | ) ) | |
| **Third-Party Plaintiff,** | ) ) | |
| **vs.** | ) ) | |
| **L.P. BROWN, INC., et al.,** | ) ) | |
| **Third-Party Defendants.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of third-party defendant FlexSol Packaging Corporation of Pompano Beach ("FlexSol") to exclude the testimony and opinions of Robert Bockersman, disclosed by the third-party plaintiff, D.G. & G., Inc. ("DG&G"), as an expert witness to testify and offer opinions that polyethylene ("PE") film used to cover cotton bales is defective.

## Background

Mr. Bockserman is the owner and president of Conatech Consulting Group, Inc., a consulting engineering firm. (FlexSol Ex. B at 40.) He has a Bachelor of Science and Master of Science, both in Agriculture and both from the University of Missouri at Columbia. (Id. at 44.)

He was retained by DG&G to analyze the water vapor transmission capacities of four different types of polymer films used in the fabrication of cotton bale covers: PE film sheeting; woven polypropylene film sheeting; "Lone Star Bag, New – 100% LLDPE [linear low density polyethylene]"; and fully coated, micro-perforated woven polypropylene. (FlexSol Ex. C at 1, 3.) As part of this analysis, a company (S.G.S. U.S. Testing Company, Inc.) used the ASTM International[1] "Test Method E-96-05, 'Standard Test Methods for Water Vapor Transmission of Materials.'" (Id. at 2; FlexSol Ex. B at 14-27.) Section 9.1 of this method provides that "[w]hen the sides of a product are different and either side may face the vapor source, four specimens shall be tested, two being tested with the vapor flow in each direction . . . ." (Id. at 16.) Unaware of this requirement, Mr. Bockserman had three specimens tested. (FlexSol Ex. D, Bockserman Dep., at 64-65, 98, 110.) He does not know how additional tests would have affected the final numbers. (Id. at 98.) Section 11.3 of the method provides that "[w]hen results of water vapor transmission are expected to be less than .05 perm,[2] a dummy specimen is strongly recommended." (FlexSol Ex. B at 16.) Although

---

[1]Originally known as the American Society for Testing and Materials. About ASTM International, http://www.ast.org/ABOUT/aboutASTM.html (last visited July 7, 2008).

[2]A "perm" is "[t]he measurement of water vapor through materials measured in perm-inch (mass of water vapor moving through a unit area in unit time)." PSC of Wis., Units of Measurement,

some of the tests resulted in water vapor transmission of less than .05 perms, no dummy specimen was used. (Bockserman Dep. at 106-07.) The protocols of the ASTM test method were not followed in this case. (Id. at 110.)

Additionally, Mr. Bockserman's report was not peer reviewed. (Id. at 34-35.)

The conclusion of that report reads, in relevant part:

> Cotton that is baled and then covered with a woven polypropylene cover will lose moisture at a greater rate than cotton that is baled and then covered with a [PE] bale cover. . . . [I]t is my opinion *that on the basis of the test results*, the cotton, when covered with the woven polypropylene polymer film, will reach equilibrium at a much faster rate, [sic] than the cotton covered with the [PE] film. . . . My technical opinion of this [PE] film sheeting is that [PE] lacks the ability to transmit water vapor as effectively as the Fully Coated, Micro-Perforated Woven Polypropylene Film. The [PE] film can be looked upon as defective because *when there is the requirement to have moisture remove itself as quickly as possible from the raw cotton bale* and, therefore, reach equilibrium with its environment, the [PE] film cannot perform adequately in this type of application.

(FlexSol Ex. C at 10; emphasis added.) There is no general requirement in the cotton industry to have moisture remove itself as quickly as possible from raw cotton bales. (Bockserman Dep. at 127-28, 153; see also Memorandum and Order on FlexSol's Motion for Summary Judgment.) Mr. Bockserman was unaware that cotton gins add moisture to baled cotton. (Bockserman Dep. at 128.)

No tests were performed using baled cotton. (Id. at 37-38.) The tests that were performed will not tell "what happens in real life with packing material and a bale of cotton." (Id. at 103.) The data from the water vapor transmission rate tests cannot be matched against "real world tests of actual cotton bales." (Id. at 40.) The ASTM method principally involves

---

http://psc.wi.gov/thelibrary/glossary/measurement.htm (last visited July 7, 2008).

film and water vapor transmission rates through barrier film; "[i]t has nothing to do with the product inside." (Id. at 37.) There is no test recognized by the National Cotton Council with respect to assessing vapor transfer. (FlexSol Ex. E, Thompson Dep., at 38.)

Mr. Bockserman's task was to determine the water vapor transmission rates of the four sample films. (Id. at 106.) He testified in his deposition that FlexSol bags were never tested as part of this research; indeed, he never looked at a FlexSol bag. (Id. at 73.) He could not compare the FlexSol bags with the samples tested in his research. (Id.) There is not, however, a wide difference in the PE bags used by the cotton industry. (DG&G Ex. 2, Shane Stephens Dep., at 55.)

## Discussion

The district court is required by the Federal Rules of Evidence to ensure that all specialized testimony or evidence admitted at trial is relevant and reliable. **Daubert v. Merrell Dow Pharm., Inc.**, 509 U.S. 579, 589 (1993). "The primary locus of this obligation is Rule 702 . . . ." **Id.** Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The required determination of whether the proffered expert is proposing to testify to specialized knowledge that will assist the trier of fact in understanding or determining a fact in issue "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology

properly can be applied to the facts in issue." **Daubert**, 509 U.S. at 592-93. This inquiry is a flexible one "'tied to the facts' of a particular 'case,'" **Kumho Tire Co. v. Carmichael**, 526 U.S. 137, 150 (1999) (quoting Daubert, 509 U.S. at 591), and focuses "solely on principles and methodology, not on the conclusions that they generate," **Daubert**, 509 U.S. at 595. "Thus, a district court is not free to choose between the conflicting views of experts whose principles and methodology are reliable and relevant." **National Bank of Commerce of El Dorado, Ark. v. Associated Milk Producers, Inc.**, 191 F.3d 858, 862 (8th Cir. 1999).

> Ultimately, the *Daubert* Court endorsed the traditional means of testing evidence in the adversary system rather than the wholesale exclusion of evidence under an uncompromising test – "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

**Id.** (quoting Daubert, 509 U.S. at 596) (alteration in original).

In **Daubert**, the Supreme Court outlined four factors that the district court may[3] consider when determining whether to admit expert testimony: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate for error in a particular scientific technique; and (4) whether the theory or technique has received general or widespread acceptance. **Id.** at 593-94. And, although the Daubert test applies to "many different kinds of expertise," **Kumho Tire Co.**, 526 U.S. at 150, "[t]he factors identified in

---

[3]Before discussing the four factors, the Supreme Court first expressed confidence "that federal judges possess the capacity to undertake [the necessary] review" of the proffered expert testimony and disclaimed any presumption that its factors were to be construed as a definitive checklist. **Daubert**, 509 U.S. at 593. Thus, the four factors outlined by the Court are not a definitive checklist or test. See **Kumho Tire Co.**, 526 U.S. at 149-50.

Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony," **id.** (alteration in original) (internal quotations omitted).

To summarize the evidence in the motion to exclude Mr. Bockserman's testimony and opinions: in two instances, he did not follow the protocol of the test method used; he cannot testify how a violation of these protocols affected the test results; in forming his opinions, he relied upon a non-existent requirement that moisture remove itself as quickly as possible from the cotton bales and, consequently, found the PE bags defective; he did not test any FlexSol PE bags; he could not compare the FlexSol bags with the materials tested; he was unaware that the gins add water to baled cotton; and there is no way to match his tests to the real world practice of covering baled cotton with PE bags. Additionally, the sample films were never tested on wet cotton bales; indeed, the tests are intended to show the vapor transmission rate from only the film and do not concern the product inside.

DG&G argues that some of these issues may be addressed on cross-examination and go to the weight of Mr. Bockserman's testimony. The Court agrees. The Court finds, however, that Mr. Bockserman's testimony does not pass the Daubert test because it is not based upon sufficient facts or data. Moreover, his findings are not the product of reliable principles and methods, nor has he applied the principles and methods reliably to the facts in this case. Because of the deficiencies addressed above, the Court concludes that Mr. Bockersman's testimony will not assist the trier of fact.

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of third-party defendant FlexSol Packaging Corporation of Pompano Beach to exclude the testimony and opinions of Robert Bockersman is **GRANTED**.  [Doc. 242]

**IT IS FURTHER ORDERED** that the motion of third-party defendant FlexSol Packaging Corporation of Pompano Beach for a hearing on its motion to exclude is **DENIED** as moot.  [Doc. 250]

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of July, 2008.